UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HILDE HERNANDEZ BERNAL, CARLOS HERRERA GARZON, MOHAMMAD HAROON LATIFI, NAHOMY ORE AQUIJE, NELSON REY PUERTA, and ALEJANDRO TORRES PALAFOX,

Petitioners,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

Case No.  1:25-cv-01887-JLT-HBK (HC)

FINDINGS AND RECOMMENDATIONS TO GRANT PETITIONERS' MOTION FOR PRELIMINARY INJUNCTION IN PART[1]

(Doc. 5)

FIVE (5) DAY OBJECTION PERIOD

Before the Court is Petitioners Hilde Hernandez Bernal, Carlos Herrera Garzon, Mohammad Haroon Latifi, Nahomy Ore Aquije, Nelson Rey Puerta, and Alejandro Torres Palafox's (collectively, "Petitioners") motion for preliminary injunction ("motion"), filed in conjunction with their petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging their re-detention and ongoing detention in U.S. Immigration Customs and Enforcement ("ICE") custody without a pre-deprivation hearing (Doc. 1).  (Doc. 5).  For the reasons stated below, the undersigned recommends granting Petitioners' motion as to the named Petitioners except for

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

Nahomy Ore Aquije and Alejandro Torres Palafox, and as to them, granting the motion in part for the reasons set forth below.

## I. BACKGROUND

On December 16, 2025, Petitioners filed a joint petition for writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1, "Petition") alleging that their detention in ICE custody without a hearing violates their Fifth Amendment procedural and substantive due process rights; their re-arrest violates the Fourth Amendment; and their re-detention was in violation of the Administrative Procedure Act. (*Id*. at 38-41). On December 19, 2025, Petitioners filed a motion for preliminary injunction requesting that the Court order Respondents to: (1) immediately release all Petitioners from custody and enjoin Respondents from re-detaining them during the pendency of the Petition; or in the alternative, (2) immediately release the Petitioners from custody and enjoin Respondents from re-detaining Petitioners unless, prior to re-detaining them, a neutral adjudicator finds that Respondents have proven by clear and convincing evidence that there has been a material change in their circumstances, and that their conditional release would pose a danger to the community or a flight risk that cannot be mitigated by an monetary or nonmonetary conditions. (Doc. 5 at 31). On January 5, 2026, Respondents filed an opposition to the motion for preliminary injunction on the sole basis that that Petitioners' detention is mandatory under U.S.C. § 1225(b). (Doc. 11). On January 13, 2026, Petitioners filed a reply. (Doc. 13).

The six Petitioners in this case are immigrant detainees in ICE custody at the California City Detention Center in California City, California who, after apprehension and brief periods of detention following arrival in this country, were released into the United States and recently re-detained without notice. The Court will briefly outline each Petitioner's respective backgrounds:[2]

////

---

[2] The facts articulated in this section come from Petitioners' verified petition, including attached declarations and exhibits. A court "may treat the allegations of a verified ... petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt,* 833 F.2d 196, 197–98 (9th Cir. 1987)). On January 22, 2026, after repeatedly failing to produce relevant A-file documents pursuant to Court Orders (Doc. 14, 17), Respondents expressly declined to file documents in support of their "argument regarding the applicability of 8 U.S.C. § 1225(b)" and "respectfully request[ed] a ruling without need for additional supporting documentation pertaining to petitioners' individual cases." (Doc. 19).

Hilde Hernandez Bernal ("Bernal"):

- Bernal is a native and citizen of Venezuela who entered the United States without inspection on or about June 2024 and was detained almost immediately thereafter. (Doc. 1-1, ¶ 1).

- On June 28, 2024, U.S. Citizenship and Immigration Services ("USCIS") issued an Order of Release on Recognizance and a Notice to Appear charging Bernal as subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection) and 8 U.S.C. § 1182(a)(7)(i)(I) (alien not in possession of valid entry document). (Doc. 1-7 at 9-17, Exh. A).

- On August 13, 2024, ICE informed Bernal she would report to the Intensive Supervision Appearance Program ("ISAP") going forward according to the terms of her release, and report to ICE once a year. (Doc. 1-1, ¶¶ 4-5). At some point, she applied for asylum and received work authorization. (*Id.*, ¶ 6).

- In October 2025, Bernal was contacted by her ISAP case manager, who informed her that she would need to appear in person for her next court hearing in Miami Immigration Court, as she lived there prior to moving back to Northern California in or around May 2025. (*Id.*, ¶¶ 8-9). She flew to Miami for the hearing on October 31, 2025, but the Immigration Judge ("IJ") did not show up, so she was given a new hearing date on December 26, 2026, and flew back to California. (*Id.*, ¶ 10). While she was in Miami, her ISAP case manager called her and informed her she was not answering her calls, which Bernal declares she did not receive, and told her to come to the ISAP office in California on Monday, November 3, 2025. (*Id.*, ¶ 11).

- On Sunday, November 2, 2025, Bernal's ISAP case manager called to confirm her address and told her to go outside because agents were looking for her. (*Id.*, ¶ 12). Bernal went outside and saw agents in the distance, so she called to them, at which point they immediately handcuffed her and took her to the San Francisco office where she was shackled and asked to sign papers she did not understand. (*Id.*, ¶¶ 12-14). She was then driven, after changing vehicles several times, to the California City Detention Facility,

3

where she is currently detained. (*Id*., ¶¶ 17-19).

- Before she was re-arrested and re-detained by ICE, Bernal lived in Daly City, California with her sister, her niece, and her niece's children. (*Id*., ¶ 24). She works cleaning houses and working in kitchen at Chase Center, going to bible study, and attended English classes a few times a week. (*Id*.). She helps support her household financially, helps care for her sister who has high blood pressure, and helps care for the children in the household. (*Id*., ¶ 25).

- Bernal has no criminal history and has complied with all her release conditions and attended all immigration court hearings. (*Id*., ¶¶ 7, 26). Her most recent Master Calendar hearing date was scheduled for January 13, 2026, at Adelanto Immigration Court. (*Id*., ¶ 21).

Carlos Herrera Garzon ("Garzon")

- Garzon is a native and citizen of Columbia who entered the United States without inspection in October 2024, was almost immediately arrested and detained, and was processed for expedited removal per Immigration and Nationality Act ("INA") Section 235(b)(1). (Doc. 1-7 at 20-21, Exh. B).

- Garzon was initially detained for several months, both in Texas and California, and was released in December 2024 and issued a Notice to Appear vacating the expedited removal order pursuant to 8 C.F.R. § 208.30, and charging him as subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection) and 8 U.S.C. § 1182(a)(7)(i)(I) (alien not in possession of valid entry document). (*Id*.at 22-24; Doc. 1-2, ¶ 1).

- Garzon was first given an ankle monitor, and several months later "put a monitoring application on [his] phone." (*Id*., ¶ 2). He was told he was marked "absent" from one call because he answered the phone when he was not at home. (Id., ¶ 2).

- Garzon was instructed to go to the ICE office in San Francisco on September 22, 2025, at which point he was arrested and detained at California City Detention Facility. (*Id*., ¶ 4).

- Before Garzon was re-detained, he lived in San Jose, California and worked as a gardener. (*Id*., ¶ 3). Garzon has no criminal history. (*Id*., ¶ 5).

4

Mohammad Haroon Latifi ("Latifi)

- Latifi is a native and citizen of Afghanistan who entered the United States in April 2023 and immediately sought asylum after crossing the border.  (Doc. 1-3, ¶ 2).  He was issued a Notice to Appear charging him as subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection). (Doc. 1-3, ¶ 1; Doc. No. 1-7 at 26-28, Exh. C).

- Latifi was released "soon after" and completed 29 check-ins with ISAP.  (Doc. 1-3, ¶ 2).  To his knowledge, he has not missed any check-ins aside from one "late" check-in that he later confirmed was acceptable.  (*Id*., ¶ 2).

- On or about December 2, 2025, he reported to a not regularly scheduled "last minute" ICE check in where he was re-arrested for alleged violation of his parole conditions (failing to upload his photo).  (*Id*. at ¶ 4).  He was told they had an "administrative warrant" for his arrest but did not produce the warrant when Latifi asked to see it.  (*Id*.). He was given a drug test after his arrest and detained at California City Detention Facility.  (*Id*. at ¶ 5).

- Before Latifi was re-arrested, he lived in Milpitas, California with his parents and five siblings, and was a principal financial supporter of his extended family.  (*Id*., ¶¶ 3, 8). Latifi has no criminal history.  (*Id*., ¶ 9).

Nahomy Ore Aquije ("Aquije")

- Aquije is a native and citizen of Peru who entered the United States without inspection on or around May 7, 2023, and after being held for five or six days was issued an order of release on recognizance.  (Doc. 1-4, ¶ 2).

- Aquije was given permission to move from New York to California, and at her September 12, 2023 ICE check-in she was issued a Notice to Appear charging her as subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection).  (Doc. 1-7 at 30-32, Exh. D).  Aquije was scheduled for yearly ICE check-ins but pursuant to her declaration, was not put on ISAP monitoring.  (Doc. 1-4, ¶ 5).

- In September 2025, at her regularly scheduled check-in appointment with ICE, Aquije was re-arrested for violation of her release conditions due to a January 2025 arrest for

battery against a spouse. (Doc. 1-7 at 34-35). Aquije declares that she was arrested and fingerprinted, but no charges were filed in criminal court, and she attaches a criminal record search indicating no record of a complaint being filed under her name. (*Id*. at 36, Exh. D; Doc. 1-4, ¶¶ 6-7).

- Aquije was initially detained at Mesa Verde Detention Facility and was then transferred to California Detention Facility on October 3, 2025. (Doc. 1-4, ¶ 10).

- Before Aquije was re-arrested, she worked at Safeway for over two years and sent money home to her parents who have health problems. (*Id*., ¶ 14).

Nelson Rey Puerta ("Puerta")

- Puerta is a native and citizen of Columbia who entered the United States without inspection on or around June 23, 2023, and was arrested and detained almost immediately after. (Doc 1-5, ¶ 1). He was issued a Notice to Appear charging him as subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) (alien entry without inspection).[3] (Doc. 1-7 at 43-48, Exh. E; Doc. 1-5, ¶ 1).

- On or around July 1, 2023, Puerta was issued an Order of Release on Recognizance and directed to present for check-ins at the ICE office in Fresno, CA. (Doc. 1-7 at 38-42, Ex. E; Doc. 1-5, ¶ 3).

- In December 2023, Puerta filed an asylum application and received work authorization. (Doc. 1-5, ¶ 4).

- On June 10, 2025, Puerta attended a scheduled court hearing before the Concord Immigration Court. (Doc. 1-5, ¶ 5). At that hearing, ICE moved to dismiss his removal proceedings. (*Id*.). As Puerta got up to leave the courtroom, he was re-arrested, asked to sign papers that he could not understand, and transferred to Mesa Verde Detention

---

[3] Respondent makes the cursory argument, without offering any evidence in support, that Puerta is subject to mandatory detention under 8 U.S.C. § 1225(b)(1)(B)(ii) which generally applies to "arriving aliens." (Doc. 11 at 2). However, the declaration and attached documents submitted with the verified Petition indicate Puerta was released on his own recognizance "in accordance with section 236 of the [INA]." (Doc. 1-5, 1-7 at 38-42). Thus, the Court will consider his due process claims in together with those alleged by his joint Petitioners who were similarly released into the country after apprehension and initial detention.

Facility.  (*Id*, ¶¶ 5-7).

- While detained at Mesa Verde, Puerta received a credible fear interview which was found negative but later reversed by the IJ who found he had a credible fear of being returned to Columbia.  (*Id*., ¶ 9).

- On September 3, 2025, Puerta was transferred to California City Detention Facility.  (*Id*., ¶ 11).  His next Master Calendar hearing date was December 24, 2025, in Adelanto Immigration Court.  (*Id*., ¶ 10).

- Before Puerta was re-arrested, he lived in Fresno, California with his partner and two stepdaughters.  (*Id*., ¶ 18).  He worked in the fields in the Central Valley of California picking seasonal fruits and is now unable to help his partner support their family financially and unable to help his partner who has medical issues.  (*Id*., ¶¶ 19-20).  Puerta attended his check-ins without issue, has not been accused of violating any terms of his release, and has no criminal history.  (*Id*., ¶¶ 3, 8, 21).

Alejandro Torres Palafox ("Palafox")

- Palafox is a native and citizen of Mexico who entered the United States in 2021 through a port of entry and asked for asylum.  (Doc. 1-6, ¶ 1; Doc. 1-7 at 55, Exh. F).

- In April 2022, he was issued a Notice to Appear charging him as subject to removal pursuant to 8 U.S.C. § 1182(a)(7)(i)(I) (alien not in possession of valid entry document) and released on his own recognizance pending removal proceedings.  (Doc. 1-6, Doc. 1-7 at 50-56, Exh. F).

- On October 31, 2025, Palafox reported to the Stockton ICE Office and was taken into custody due to violations of the ISAP program including multiple missed self-check-ins, successful check-ins "outside zone," and missed biometric check-ins between November 2023 and August 2025.  (Doc. 1-7 at 56).  Palafox was informed he was arrested because his check-in reports were "late or lost," but he declares that he always did his check-ins.  (Doc. 1-6, ¶¶ 4-5).

- Palafox was brought to the California City Detention Facility.  (*Id*., ¶ 6).  His latest Master Calendar hearing date was January 13, 2026, in Adelanto Immigration Court.  (*Id*., ¶ 8).

- Before Palafox was rearrested, he lived in Turlock, California with his wife and three children, worked in the pistachio and almond fields, and went to group prayer every Saturday.  (*Id.*, ¶ 3).  Palafox has no criminal history.  (*Id.*, ¶ 9).

## II. APPLICABLE LAW AND ANALYSIS

Pursuant to Federal Rule of Civil Procedure 65, a court may grant a preliminary injunction to prevent immediate and irreparable injury.  Fed. R. Civ. P. 65(b).  A preliminary injunction is "an extraordinary remedy" and may be issued only if plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiff bears the burden of clearly satisfying all four prongs. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  A preliminary injunction will not issue if plaintiff merely shows irreparable harm is possible – a showing of likelihood is required.  *Id.* at 1131.  However, under the "sliding scale" variant of the *Winter* standard recognized by the Ninth Circuit, "if a plaintiff can show that there are 'serious questions going to the merits' – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All. For the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017) (emphasis in original); *Cottrell*, 632 F.3d at 1135.

### A. Likelihood of Success on the Merits

"The first *Winter* factor, the likelihood of success on the merits, 'is a threshold inquiry and is the most important factor in any motion for preliminary injunction.'" *Doe v. Becerra*, ---F. Supp. 3d ---, 2025 WL 691664, at *3 (E.D. Cal. Mar. 3, 2025) (quoting *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023)).  Petitioners argue they are likely to succeed on their claim that their re-detention without a hearing violates their procedural and substantive due process rights under the Fifth Amendment.[4] (Doc. 5 at 16-29).  Respondents' sole argument is the motion for

---

[4] As discussed below, the Court recommends partially granting the motion based on the likelihood of success of the procedural due process claim; thus, the Court need not address Petitioners' argument regarding substantive due process.

8

preliminary injunction should be denied because Petitioners are subject to mandatory detention under 8 U.S.C. § 1225(b) pending the outcome of their removal proceedings.  (Doc. 11 at 4-6).

### 1. Statutory and Legal Framework

As background, the Court will briefly outline the statutory framework of detention authority under the INA, and the recent shift in long-standing practice by Executive agencies in interpreting these statues.

### a. Mandatory Detention under 8 U.S.C. § 1225(b)

Title 8 U.S.C. § 1225, titled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," states that an "alien present in the United States who has not been admitted or arrives in the United States … shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1).  "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)).  Pursuant to § 1225(b)(1), if an immigration officer determines that an arriving alien is inadmissible, and the alien does not indicate an intention to apply for asylum or a fear of persecution, "the officer [must] order the alien removed from the United States without further hearing or review." § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7).  As relevant here, pursuant to § 1225(b)(2)(A), subject to certain exceptions, "in the case of an alien who is an applicant for admission, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under 1229a of this title." § 1225(b)(2)(A) (emphasis added).  "Applicants for admission" may be temporarily released on parole only "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).  As explained by the Supreme Court in *Jennings v. Rodriguez*,

> [r]ead most naturally, §§ 1225(b)(1) and (b)(2) … mandate detention of applicants for admission until certain proceedings have concluded. Section 1225(b)(1) aliens are detained for "further consideration of the application for asylum," and § 1225(b)(2) aliens are in turn detained for "[removal] proceeding[s]." Once those proceedings end, detention under § 1225(b) must end as well. Until that point, however, nothing in the statutory text imposes any limit on the length

of detention. And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.

583 U.S. at 297.

### b. Discretionary Detention under 8 U.S.C. § 1226(a)[5]

Title 8 U.S.C. § 1226, titled "Apprehension and detention of aliens," instructs that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States."  Pursuant to § 1226(a) the government has broad discretion whether to continue to detain the arrested alien or release the alien on (A) bond of at least $1,500 … or (B) conditional parole.  § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)) (noting an ICE officer makes the initial custody determination when a person is apprehended under § 1226(a) and may release the alien if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").  Section 1226 also provides that "a detainee may request a bond hearing before an IJ at any time before a removal order becomes final," and may request an additional bond hearing if he or she can demonstrate a material change in circumstances.  *Id*. at 1197 (citing 8 C.F.R. § 236.1(d)(1), 1003.19(e)).

"Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)).  To obtain release, the detainee must demonstrate by the preponderance of the evidence that he or she is "not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *Matter of Guerra*, 24 I.& N. Dec. 37, 40 (B.I.A. 2006); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).  After discretionary release under § 1226(a), the government retains authority "at any time" to revoke bond or conditional parole, rearrest the alien

---

[5] Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289 (emphasis in original).  In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of alien ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes.  LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

*under the original warrant*, and detain the alien.  § 1226(b).  However, "if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance.  Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstance before re-arrest." *M.R.R. v. Chestnut*, 2025 WL 3265446, at *3 (E.D. Cal. Nov. 24, 2025) (internal citations omitted); *Martinez Hernandez v. Andrews*, 2025 WL 2495756, at *10 (E.D. Cal. Aug. 28, 2025) (noting that while statute allows for rearrest at any time, "this does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

Relevant here is DHS's "Alternatives to Detention" (ATD) program, designed "to provide supervised release and enhanced monitoring for a subset of foreign nationals subject to removal whom ICE has released into the United States." *Audrey Singer*, Cong. Research Serv., R45804, Immigration: Alternatives to Detention (ATD) Programs 14 (July 8, 2019), https://sgp.fas.org/crs/homesec/R45804.pdf.  "These aliens are not statutorily mandated to be in DHS custody, are not considered threats to public safety or national security, and have been released either on bond, their own recognizance, or parole pending a decision on whether they should be removed from the United States." *Id*.

### c.  Government's Change in Position

"Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025); *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025) (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Until the government adopted its new interpretation of § 1225(b)(2) this year, the longstanding (almost three decades) practice of the agencies charged with interpreting and enforcing the INA without inspection and were apprehended while present in the U.S.  By contrast, those apprehended at or near a port of entry were designated as 'arriving aliens.'); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1244 (W.D. Wash. 2025) ("The longstanding practice of the

11

Executive branch agencies charged with interpreting and enforcing the INA considered noncitizens like [petitioner] who had entered without inspection, and were apprehended while residing in the United States, as subject to Section 1226(a).").  However, in July 2025, the Department of Homeland Security ("DHS"), in conjunction with the Department of Justice ("DOJ") adopted the legal position that § 1225, instead of § 1226, is the applicable immigration authority for an "applicant for admission" including an alien present in the United States "who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival," and all applicants for admission are subject to mandatory detention under § 1225(b). The Notice further provides "[t]hese aliens are also ineligible for a custody redetermination hearing ('bond hearing') before an immigration judge and may not be released for the duration of their removal proceedings absent a parole by DHS.  For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7, 2026).  As noted above, in September 2025, the BIA issued a precedential decision adopting this interpretation of the government's detention authority under the INA and holding that IJ's do not have authority to hear bond requests or grant bond to aliens "who are present in the United States without admission," because they are applicants for admission and subject to mandatory detention under § 1225(b)(2)(A).  *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.

## 2. Due Process

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law."  Further, it is "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Trump v. J.G.G.*, 604 U.S. 670 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 305 (1993)*; Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). However, the Supreme Court has simultaneously acknowledged that "the nature of protection [under the Due Process clause] may vary depending on [immigration] status and circumstance." *Zadvydas*, 522 U.S. at 693 ("The distinction between

12

an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."). As relevant here, "once an alien enters the country, the legal circumstances change, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary or permanent." *Id*.; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'"). The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

### 3.  Analysis

As an initial matter, the Court notes that Respondents do not meaningfully address Petitioners' claims that their re-detention without a hearing violates their due process rights. (*See* Doc. 11 at 4-6 (requesting only that if the Court determines petitioners' detention "ultimately is governed by § 1226," the remedy be to order Respondents to provide a bond hearing to consider the merits of release)); *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (holding party abandons claim by not raising them in opposition to movant's motion). Rather, Respondents' sole argument is the motion for preliminary injunction should be denied because each Petitioner is "an applicant for admission" as defined in § 1225(a)(1) and is therefore subject to the mandatory detention without a bond hearing under § 1225(b) while their removal proceedings are pending. (Doc. 11 at 5). However, the instant Petition does not allege that Petitioners' re-detention under § 1225(b)(2), as opposed to § 1226(a), is a violation of the INA; thus, they do not make any arguments as to the likelihood of success on the merits of such a claim. (See Doc. 1, asserting claims of violation of procedural and substantive due process, violation of Fourth Amendment protections, and violation of the Administrative Procedure Act).

Regardless, given the relevance of this dispute to the due process analysis, as a threshold matter the Court joins with the overwhelming majority of courts across the country in rejecting

13

Respondents' argument that noncitizens who were previously released on conditional parole and later re-detained are "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A); rather, the detention of those noncitizens, like Petitioners, continues to be governed by § 1226(a) during removal proceedings.  *See, e.g., Montero-Alvarez v. Alberran*, 2025 WL 3754116, at *4 (E.D. Cal. Dec. 29, 2025) (collecting cases); *Sharan S. v. Chestnut*, 2025 WL 3167826, at *5 (E.D. Cal. Nov. 12, 2025) ("Respondents' argument that section 1225(b)(2)(A) applies to all noncitizens present in the United States without admission is unpersuasive. Respondents' proposed interpretation of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice."); *C.A.R.V. v. Wofford*, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 3, 2025) ("The government's recent interpretation of the relationship between § 1225 and § 1226 is unfounded and detention is therefore not 'mandatory' in this case, where petitioner has been present in the United States for approximately four years and was released on his own recognizance well before Respondents adopted the new interpretation of the governing statutes."); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) ("By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.  Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.") (collecting cases); *But see, e.g., Alonzo v. Noem*, 2025 WL 3208284, at *5 (E.D. Cal. Nov. 17, 2025) (denying motion for temporary restraining order because petitioner failed to establish he was likely to succeed on the merits of his statutory claim, but also noting the finding "should not be understood an affirmative endorsement of the view that respondents' interpretation of § 1225(b)(2)(A) – which is in line with the expansive understanding of mandatory detention applicability – is correct."); *Ramos v. Lyons*, 2025 WL

14

3199872 (C.D. Cal. Nov. 12, 2025).

Here, Petitioners argue they are likely to succeed on the merits of their claim that their Fifth Amendment procedural due process rights are being violated. (Doc. 5 at 16-29). Procedural due process claims are analyzed in two steps. *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). First, the Court examines whether a protected liberty interest exists. *Garcia v. Andrews*, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025 (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)). Respondents do not contest that all Petitioners were apprehended at the border or soon after entering the country and all were subsequently released. (*See* Doc. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6). As explained *supra*, an ICE officer makes an initial custody determination when a person is apprehended under § 1226(a) and has the discretion to release the alien if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). Thus, a prior decision to "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *Espinoza v. Kaiser*, 2025 WL 2675785, at *6 (E.D. Cal. Sept. 18, 2025) (noting a person on conditional parole is generally released on their own recognizance subject to certain conditions such as reporting requirements); *see also Ortega v. Gonzales*, 501 F.3d 1111, 1120 (9th Cir. 2007) ("release on recognizance" was used as another name for "conditional parole" under § 1226(a)).

Where, as here, "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody [he or] she has a protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025) ("[e]ven when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that [he or] she will be re-detained only if [he or] she violates the conditions of her release.") (collecting cases).

Petitioners were released from custody pending a final removal decision, and in those years of living in the country they have built community, including working, taking care of family members, engaging with the community, and attending church.  Thus, the Court finds Petitioners' release and time spent out of custody gives rise to a protected liberty interest in continued release following conditional parole.[6]  *See Solano v. Robbins*, 2025 WL 3718831, at *6 (E.D. Cal. Dec. 23, 2025) ("Relying on *Morrissey*, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected interest in remaining out of immigration custody.") (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1033 ("These extensive relations of support and interdependence underscore the high stakes of [their] liberty.").

Finding that due process applies, the question before the Court is, what process is due? "The constitution typically requires some kind of hearing before the State deprives a person of liberty or property.  This is particularly true when the interest is in liberty, the loss of which cannot fully be compensated after the fact." *Salcedo Aceros*, 2025 WL 2637503, at *5 (internal quotations and citations omitted).  To determine whether constitutionally sufficient procedures to protect a liberty interest of a previously released and then re-detained noncitizen, courts apply the three factor balancing test outlined in *Mathews v. Eldridge*:[7] (1) the private interest that will be affected by the official action, (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional procedural safeguards, and (3) the government's interest, including the function involved, as well as the fiscal and administrative

---

[6] As noted recently by this Court, "[e]ven assuming Respondents are correct that § 1225(b) is the applicable detention authority for all 'applicants for admission,' Respondents fail to contend with the liberty interest created by the fact that [Petitioners in this case were released] *prior to the manifestation of this interpretation*." *Garcia v. Chestnut*, 2025 WL 3771348, at *9 (E.D. Cal. Dec. 31, 2025) (emphasis in original).

[7] The Ninth Circuit has noted that the Supreme Court "when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz*, 53 F.4th at 1206-07.  However, in light of the consistent employment of *Mathews* by district courts in the Ninth Circuit in determining whether due process applies in the context of re-detention of previously paroled noncitizens, the Court proceeds to apply those factors while still reserving judgment on whether *Mathews* is an "all embracing test" when encountering due process challenges by immigrant detainees. *See A.E. v. Andrews*, 2025 WL 1424382, at *4 (citing *Dusenbury v. United States*, 534 U.S. 161, 168 (2002) ("we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims.").

16

burdens that the procedural requirement would entail.  424 U.S. 319, 335 (1976).

First, the Court considers "the private interest that will be affected by the official action." *Id*.  Petitioners have a substantial private interest in remaining free from detention.  *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects."); *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (recognizing it is "beyond dispute" that the "private interest at issue here is 'fundamental': freedom from imprisonment is the 'core of the liberty protected by the Due Process Clause.'").  Clearly, Petitioners have an interest in providing care for their families, being employed, obtaining medical care, and maintaining relationships in the community.  *See Pinchi*, 792 F. Supp. 3d at 1033.  Thus, Petitioners' private interest is heavily affected and this factor weighs in favor of Petitioners.

Second, the Court considers "the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335.  Here, Petitioners received no form of custody redetermination hearing regarding re-detention.  Thus, the risk of erroneous deprivation is considerable.  *See A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation of [a petitioner's] interest is high where [h]e has not received any bond or custody redetermination hearing.") (internal quotations omitted).  Civil immigration detention is assumed to be "nonpunitive in purpose and effect," and is therefore justified when a noncitizen presents a risk of flight or danger to the community.  *See Zadvydas*, 533 U.S. at 690.  Based on the verified Petition and attached declarations, Petitioners were released subject to certain reporting conditions.  "In general, release reflects a determination by the government that the noncitizen is not a danger to the community of a flight risk." *Saravia*, 280 F. Supp. 3d at 1176.  Here, Petitioners Bernal, Garzon, Latifi and Puerta were detained after years of attending scheduled immigration hearings and complying with terms of release, and despite community ties and lack of criminal record.  (Doc. 1-1, 1-2, 1-3, 1-5).

There is evidence in the supporting documents submitted by Petitioner Palafox that he was arrested and detained by ICE for violation of his release conditions, including missing biometric

17

check-ins and self-report check-ins, and checking in "outside zone," on multiple occasions between 2023 and 2025. (Doc. 1-7 at 56, Exh. F). Palafox reported to ICE officers that he was "never informed" of that violation information, and declares that he always "did" his check-ins. (*Id*.; Doc. 1-6 at 2). Also, documents submitted by Petitioner Aquije indicate she was taken into custody for violation of the conditions of her release at a routine check-in where ICE officials determined she was arrested in January 2025 for battery of a spouse. (Doc. 1-7 at 34). Aquije attests that she was never charged or convicted and attaches a criminal record search showing no record of criminal complaint against her. (*Id*. at 36; Doc. 1-6 at 2-3). Notably, Respondents make no argument that Palafox or Aquije present a flight risk or danger, and Palafox and Aquije attest to attending regular check-ins as required under the conditions of their parole, including the appointments where they were arrested and re-detained. (Doc. 1-4, 1-6). Regardless, given the absence of determination by a neutral arbitrator as to whether Petitioners are currently a flight risk or danger to the community, both the risk of erroneous deprivation of these Petitioners' interest, and the probable value of additional safeguards, is high. *See A.E.*, 2025 WL 1424382, at *5.

Third, the Court considers the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 334. Unquestionably, the government has a significant national interest in enforcing its immigration laws. Indeed, it is a sovereign's fundamental right to control its borders, to protect national security, and ensure integrity in its immigration system. However, Respondents fail to explain how these Petitioners threaten these interests or how the government's interest is weakened by affording these Petitioners a hearing before a neutral decisionmaker. Nor does Respondents offer evidence of how affording a hearing results in either a fiscal or administrative burden, which has been found to be "minimal" by other courts. *See J.A.E.M. v. Wofford*, 2025 WL 3013377, at *7 (E.D. Cal. Oct. 27, 2025) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."). Because Respondents did not provide Petitioners with notice or reasons prior to their re-detention, and have seemingly offered no reasoning in any proceedings, including this one before this Court, as to why those decisions were made, the Court finds

18

Respondents have failed to demonstrate a significant interest in Petitioners detention. *See Noori v. LaRose*, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025).  As recently explained by a court in this district,

> the government's asserted interest is hinged on mere speculation about Petitioner's risk of flight or dangerousness. [Petitioners] seek a bond hearing, not unqualified release.  Providing a bond hearing would not undercut the government's asserted interest in effecting removal.  Indeed, the purpose of a bond hearing is to inquire whether the alien represents a flight risk or danger to the community.  Given 'the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified,' courts have concluded that 'the government's interest is not as weighty as Petitioner's.

*A.E. V. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).  This Court joins in this analysis and finds Petitioners' interest outweighs the government's interest in this instance.

Based on the foregoing, the Court finds the *Mathews* factors weigh in favor of Petitioners.  Therefore, Petitioners have demonstrated a likelihood of success on the merits of their claim that re-detention without hearing was a violation of their procedural due process rights.

**B.  Irreparable Harm**

To prevail on a motion for preliminary injunction, the moving party must show that imminent, irreparable harm is likely in the absence of a court order.  *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Hernandez*, 872 F.3d at 994-95(citation omitted) (noting the irreparable harms imposed on those subject to immigration detention may include "subpar medical and psychiatric care in ICE," economic burdens on families, and collateral harm to the children of detainees); *see also Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure § 2948.1 (2d ed. 2004) ("When an alleged deprivation of a constitutional right is involved, most courts hold no further showing of irreparable injury is necessary.").  Accordingly, given the Court's determination *supra* that Petitioners are likely to succeed on the merits of their procedural due process claims, they

19

have demonstrated that irreparable harm is likely in the absence of preliminary injunction.

**C.  Balance of Equities and the Public Interest**

The final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (cleaned up).  In contrast, the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Thus, as widely held by courts in this district and others under similar circumstances, "the potential harm to [Petitioners] is significant, while the potential harm to the government is minimal." *Valencia Zapata*, 2025 WL 2578207, at *4; *see Singh v. Andrews*, 2025 WL 1918679, at *9 (E.D. Cal. July 11, 2025) ("Faced with … a conflict between minimally costly procedures and preventable human suffering, [the Court has] little difficulty concluding that the balance of hardships tips decidedly in [Petitioners'] favor.").

**D.  Conclusion and Remedy**

As discussed *supra*, the Court finds Petitioner is likely to succeed on the merits of their claim, immediate and irreparable injury is likely in the absence of an injunction, and the balance of equities and public interest weigh in favor of a preliminary injunction.  Thus, the undersigned recommends granting Petitioners' motion for preliminary injunction in part.

The primary purpose of a preliminary injunction is preservation of the status quo pending determination of an action on the merits.  *See, e.g., Ramos v. Wolf*, 975 F.3d 872, 887 (9th Cir. 2020); *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).  The Court now considers whether a pre-deprivation or post-deprivation bond hearing is appropriate for Petitioners in this case.  As previously reasoned by the assigned district judge,

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require

arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128, 110 S.Ct. 975 (noting there may be "special case[s]" where a pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 795 F.Supp.3d 1316, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted her detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before her immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for her arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

**\*12** In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretextual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated her flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. Carballo v. Andrews, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing Perera v. Jennings, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); Pham v. Becerra, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*M.R.R.*, 2025 WL 3265446, at \*11-12.

First, as to Bernal, Garzon, Latifi, and Puerta, these Petitioners have no criminal history. Nor do Respondents submit any evidence of violations of their conditions of release, or make any argument that these Petitioners are a flight risk or danger to the community. The Court's review of Petitioners' declarations and attached documents offers no indicia that their detainment was based on any purported violations of their release conditions. (Doc. 1-1, 1-2, 1-3, 1-5). Consequently, the Court recommends that a pre-deprivation hearing is appropriate for Petitioners Bernal, Garzon, Latifi, and Puerta based on the facts of their cases.

As to Petitioners Aquije and Palafox, while the Court is mindful that Respondents similarly failed to provide any evidence or discussion that they violated the terms of his release or presented a danger or flight risk, the reports generated at the time of their respective detention expressly relied on violations of the ISAP program as the basis for Palafox's re-detention (Doc. 1-7 at 56), and relied upon violations of the conditions of Aquije's release from ERO custody as the basis for her re-detention (Doc. 1-7 at 34). Based on the above reasoning, the undersigned recommends the Court order Respondents to provide a prompt, post-deprivation hearing in the case of Petitioners Palafox and Aquije. *See M.R.R.*, 2025 WL 3265446, at \*11-12.

Finally, "consistent with the numerous decisions of other courts in this circuit who have ruled on this issue, at such a hearing the burden [will] be on the government to prove that Petitioner is a flight risk or danger to the community by clear and convincing evidence." *Yosseline P.G. v. Noem*, 2026 WL 183732, at \*5 (E.D. Cal. Jan. 23, 2026) (collecting cases); *J.E.H.G. v. Chestnut*, 2025 WL 3523108, at \*14 (E.D. Cal. Dec. 9, 2025) (noting "the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.")

Accordingly, it is hereby **RECOMMENDED:**

1. Petitioners' Motion for Preliminary Injunction (Doc. 5) be **GRANTED in part** as
   follows:

22

a. Respondents be directed to IMMEDIATELY release Petitioners Hilde Hernandez Bernal, Carlos Herrera Garzon, Mohammed Haroon Latifi, and Nelson Ray Puerta from DHS custody on the conditions of their prior release from custody.

b. Respondents be directed to provide Petitioners Nahomy Ore Aquije and Alejandro Torres Palafox with a substantive parole revocation hearing at which the Immigration Judge will determine whether either Petitioner poses a risk of flight or a danger to the community if released.

c. At such a hearing, the government be directed that they SHALL bear the burden of establishing, by clear and convincing evidence, that the Petitioner poses a danger to the community or flight risk.

2. Once released, Respondents be PERMANENTLY ENJOINED AND RESTRAINED from rearresting or re-detaining Petitioners absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice of at least seven days before a pre-deprivation hearing at which the government will bear the burden of demonstrating by clear and convincing evidence that they are likely to flee or pose a danger to society if not arrested.

3. The bond requirement of Federal Rule of Civil Procedure 65(c) be waived.  Courts regularly waive security in these cases. *See, e.g., Lepe v. Andrews*, 2025 WL 2716910, at *10 (E.D. Cal. Sept. 23, 2025).

4. Respondents be directed that they may file further briefing on the merits of the Petition within 30 days, or alternatively, a notice that they do not intend to file further briefing.  And Petitioners be permitted to respond to any further briefing no later than 21 days thereafter.

### NOTICE OF EXPEDITED OBJECTIONS

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Given the urgency of a preliminary injunction, a party may file written objections with the Court**

**within five (5) days of service of these Findings and Recommendations.** *Id.*; Local Rule 304(b) (permitting court to set a different time). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:    January 27, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

24